## In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Clarence Sullivan, #233906, | ) | Civil Action No 9:06-1588-MBS-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Lt. Coleman and Sgt. Hodges of the South | ) | |
| Carolina Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  INTRODUCTION

The Plaintiff, Clarence Sullivan ("Plaintiff" or "Sullivan"), is a state prisoner in the custody of the South Carolina Department of Corrections ("SCDC") who was incarcerated at Turbeville Correctional Institution (TCI") at the time of the alleged incident giving rise to this action.[1]  Proceeding *pro se*, he seeks relief under Title 42 United States Code § 1983, alleging that the above-named Defendants were deliberately indifferent to his safety while he was housed in TCI.  Plaintiff seeks compensation in the amount of $150,000.00 and abrogation of the alleged policy permitting handcuffed inmates to be placed in cells with un-handcuffed inmates.[2]

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  The Defendants have filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

---

[1]    Sullivan is presently incarcerated in the SCDC's Evans Correctional Institution ("ECI").

[2]    *See* Complaint [1-1] at p. 5.

## II.  *PRO SE* COMPLAINT

Sullivan is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of  28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert.*

*denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  FACTUAL BACKGROUND

Plaintiff alleges that on June 28, 2005, during the time he was housed in TCI's Special Management Unit ("SMU"), one of the Defendants, Lt. Coleman, placed him in a cell with another inmate with whom Plaintiff "had a prior altercation with in the general population."[3] Plaintiff alleges he told Lt. Coleman:

> [That this inmate and I had issues with each other and I didn't want to enter that cell.  My request to be placed in another cell was denied and told that 'we had all night to work it[.]'  Needless to say that I nor the other inmate slept that night.
>
> The next morning we went out for recreation, after recreation I was handcuffed behind my back and placed in the cell by Sgt. Hodges.  The Sgt. refused to remove the handcuffs, I even asked that he removed [sic] them, the officer smiled and closed the flap and walked away.
>
> While in this helpless condition I was attacked by my roommate I was punched repeatdly [sic] in the fact, kicked and spit on.  I yelled for help, no help came for about ten (10) minutes.
>
> Moments later the door was open officers Durant and Joseph pulled the Inmate off of me and moved me to another side of SMU.
>
> Subsequently, I was taken to medical for my injuries even until this day my jaw causes me great discomfort from this assault.  This violent attack upon my body when I was handcuffed behind my back and placed in a cell after I informed officials that sharing a cell with this particular inmate was indeed a potential danger of imminent harm.  That by placing me in that cell, that Lt. Coleman and Officer Hodges acted with reckless disregard of my right to be free from violent attack[.][4]

In response, Defendant Hodges asserts in his Answer and in his Affidavit attached to the memorandum in support of the motion for summary judgment[5] he admits that he accidentally left handcuffs on the Plaintiff after placing him in his cell.  He states that he must have been distracted

---

[3]        *See* Complaint [1-1] at p. 3.

[4]        *See* Complaint [1-1] at pp. 3-4.

[5]        *See* Answer [8-1] and Affidavit of Hodges, attached as [10-3] to Defendants' Motion.

by other inmates and/or other duties and forgot to remove the handcuffs. He also states that this was an oversight and a good-faith mistake. Defendant Hodges denies that Sullivan asked him to remove his handcuffs and denies any knowledge that Sullivan might be assaulted by his cell mate.

In his Answer and in his Affidavit, Defendant Coleman likewise denies that Plaintiff ever told him that he had "issues" with his cell mate and did not want to be placed in the same cell with his cell mate. Coleman further states in his Affidavit that Plaintiff told him that his roommate slapped him while he was still in the handcuffs.[6]

Both Defendant Hodges and Defendant Coleman state in their affidavits that they observed the Plaintiff after the incident in question and the only injury they saw was a scratch on the right side of his face. Plaintiff's medical records from SCDC indicate that Plaintiff was seen by Nurse Gerald Scriven of the TCI medical staff, at the request of "the Sgt." on June 29.[7] Nurse Scriven noted that "inmate has a scratch on the right side" of his face, and that Plaintiff "complained of pain and edema at the site."[8]

Plaintiff filed a Step One Inmate Grievance Form at TCI on June 28, 2005, the same day that the incident occurred (the "TCI Grievance"). On July 5, 2005, Plaintiff was transferred from TCI to ECI, and two days later, on July 7, 2995, Plaintiff filed a duplicate grievance using a Step One Inmate Grievance Form (the "ECI Grievance"). Elaine Redfearn, is the Institution Grievance Coordinator at ECI, was assigned responsibility for both the TCI Grievance and the ECI Grievance.[9] According to Ms. Redfearn:

> The first grievance was referred to an Investigator Grice at TCI and then to the warden at TCI for a decision. The decision of the warden was dated November 29, 2005. It was received by me at ECI on December 14, 2005. I provided plaintiff with a copy of the warden's decision on December 15, 2005 [regarding the TCI Grievance]. I advised plaintiff at that time that if he was not satisfied with

---

[6]    *See* Answer [8-1] and Affidavit of Coleman, attached as [10-4] to Defendants' Motion.

[7]    *See* Affidavit of Coleman, attached as [10-4].

[8]    *See* Medical Records, attached as 10-5, at p. 5.

[9]    *See* Redfearn Affidavit [10-6].

the warden's decision, he had five (5) days to file a Step 2 Inmate Grievance Form, which would be an appeal of the warden's decision.  Plaintiff also checked the box on the [TCI] Step 1 Inmate Grievance Form indicating that he did not accept the warden's decision and wished to appeal.  I gave the plaintiff a blank Step 2 Inmate Grievance Form to use to appeal the warden's decision. . . . .

Plaintiff failed to return his Step 2 Inmate Grievance Form in a timely manner.  Therefore, I closed his grievance.  I did not record the exact date that I closed the grievance but it would have been no earlier than December 22, 2005.  The Step 2 Inmate Grievance Form was due no later than December 20, 2005, five (5) days after plaintiff was advised verbally and in writing of the warden's decision.

Plaintiff's second grievance [the ECI Grievance] was returned to him unprocessed on February 28, 2006 because it was a duplicate of the first grievance which had been closed, as stated above.[10]

Defendants contend Plaintiff has failed to exhaust his administrative remedies by not completing the SCDC grievance process.

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

Sullivan commenced this action on May 23, 2006[11] against the above-captioned defendants, Lt. Coleman and Sgt. Hodges (collectively, the "Defendants") alleging deliberate indifference to his safety while at TCI.  [1-1]

After the Defendants were served, they filed an Answer and then a Motion for Summary Judgment pursuant to Rule 56(c), Fed.R.Civ.P.  In their Answer as well as in their Memorandum of Law attached to the Motion for Summary Judgment, the Defendants alleged, among other defenses, that Plaintiff had failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997(e).  [10-1; 10-2]

The undersigned issued an Order on August 9, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the Motion for Summary Judgment

---

[10]     *Id.*

[11]     Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Complaint.

within thirty-four (34) days.  [11-1]  On September 8, 2006, the Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment.  [12-1]

## V.  SUMMARY JUDGMENT STANDARD

The motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence.  *Ross*, 759 F.3d at 364.  Put another way, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*,  818 F. 2d 1126 (4th Cir. 1987).  Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*,  855 F. 2d 167 (4th Cir. 1988).

Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to

be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary

judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court

must enquire "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail asa matter of law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## VI. DISCUSSION

As a threshold matter, the Defendants, in their answer, have alleged as an affirmative

defense[12] that Plaintiff failed to exhaust his administrative remedies as provided for by the SCDC

inmate grievance procedure prior to filing suit.[13] The Prison Litigation Reform Act ("PLRA")

requires that a prisoner exhaust administrative remedies before filing a Section 1983 action

concerning his confinement. 42 U.S.C.A. §1997e(a) states:

---

[12]     *See* Answer [8-1] at ¶ 5. The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under Section 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure like the defense of statute of limitations. *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir.2005) ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his Section 1983 prison-conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); *Jackson v. District of Columbia*, 254 F.3d 262, 267 (D.C.Cir. 2001); *Casanova v. Dubois*, 304 F.3d 75, 77, fn. 3 (1st Cir. *2002*); *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19, (2d Cir. 1999); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Massey v. Helman*, 196 F.3d 727, 734-35 (7th Cir. 2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001); *cf. Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), *cert. denied*, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000) (An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.").

[13]     *See* Affidavit of Redfearn, attached as [10-6] to Defendants' Motion.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir.2005), and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.").  Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983.  *Woodford v. Ngo*, 548 U.S. __, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

In the present case, Plaintiff has failed to exhaust his administrative remedies.  The record reveals that he abandoned his grievance by failing to complete and return the Step 2 Inmate Grievance Form, which would have been an appeal of the warden's decision with which plaintiff was dissatisfied.  Plaintiff was advised of the right to file the Step 2 Inmate Grievance Form, and he was given a blank Step 2 Inmate Grievance Form which clearly states that on its face that the decision on the Step 2 Inmate Grievance Form exhausts the appeal process of the Inmate Grievance Procedure and is SCDC's final response to this matter.[14]  Until and unless the grievance procedure is exhausted, Plaintiff may not maintain a §1983 action.

Even if Plaintiff had exhausted his administrative remedies, the undersigned finds that his claims fail to establish that the Defendants violated his rights under Section 1983.  The Eighth

---

[14]        *See* Affidavit of Redfearn, attached as [10-6].

Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish a claim under Section 1983 for failure to protect from violence, an inmate must show: (1) "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); and (2) that the prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).

In *Odom v. South Carolina Dep't of Corrections*, 349 F.3d 765, 773 (4th Cir 2003), the Fourth Circuit observed:

> [C]orrectional officers who are present when a violent altercation involving an armed inmate erupts and fail to intervene immediately do not violate the Eighth Amendment if officers are unarmed, unaware of a risk of harm prior to the altercation, and take reasonable steps to intervene safely.... By the same token, . . . a correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the rights of the victim inmate. *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir.1978). *Gordon* does not suggest whether the officers knew about the potential violence before the attack or whether they were merely present when the fight broke out; nevertheless, the plaintiff stated a viable claim as a result of the officers' failure to take any action whatsoever.

Hodges admits negligence, but mere negligence does not violate the Eighth Amendment. *Pressly, supra.* Also, plaintiff does not allege that Hodges knew of any specific risk of harm plaintiff's cell mate posed to him. This alleged information about "issues" between plaintiff and his cell mate was conveyed to Coleman only, according to the Complaint. Unless plaintiff can establish that Hodges was aware of a "specific known risk of harm", no Eighth Amendment claim can be made against Hodges. *Pressly, supra*.

Coleman denies having any information of a "specific known risk of harm" either from prior general experience or specific information from plaintiff. Even if Coleman possessed that information and was negligent or even deliberately indifferent in failing to act on it, Coleman's actions and/or inactions were not the proximate cause of any injuries sustained by plaintiff. Even after plaintiff allegedly told Coleman on the day before the incident in question that he did not

want to be placed in the same cell with his cell mate, plaintiff and his cell mate spent the night in the cell together with no resulting harm or injury to plaintiff, other than a sleepless night.[15].

Even if it were assumed, for sake of discussion, that both Defendants were deliberately indifferent, plaintiff's injuries are *de minimis*. Plaintiff told Coleman that his cell mate slapped him.[16] The only injury observed by defendants Hodges and Coleman was a small scratch on the right side of plaintiff's face.[17]

When Plaintiff received treatment from a TCI nurse on the same day of the incident, the nurse observed a scratch and some swelling on the right side of Plaintiff's face. The medical records from June 29, 2005 through August 12, 2005 reveal a scratch on the right side of plaintiff's face and moderate swelling and occasional pain at the site. Also, there were subjective reports by plaintiff of a popping sound. There were two (2) medical visits during this period of time when there was no mention of jaw pain or popping whatsoever. Also, Plaintiff asked to see a doctor but failed to keep his appointment. Over 6 months passed until Plaintiff lodged another complaint of jaw pain on February 21, 2006. Plaintiff was seen by a doctor on March 6, 2006, who noted crepitation (a crackling sound) in the right temporomandibular joint and prescribed a non-steroidal, anti-inflammatory drug, Indomethacin, to be taken twice a day as needed for 10 days. Twelve days later, Sullivan again asked to see the doctor but again failed to keep his appointment.[18]

---

[15]     See Complaint [1-1] at ¶ IV.

[16]     *See* Affidavit of Coleman attached as [10-4].

[17]     *See* Affidavit of Hodge attached as [10-3] and Affidavit of Coleman attached as [10-4].

[18]     *See* medical records attached at [10-6]. In response to the Defendants' argument that Plaintiff missed two medical appointments, Plaintiff alleges that this occurred because of "a clear cut conspiracy against the plaintiff by SCDC Correctional Officials" who "did refuse to allow the plaintiff the needed access to attend his assigned Dr. Appointments; due to the control [sic] movement schedule." *See* Plaintiff's Objection [12-1] at p. 4.

Plaintiff's medical records fail to support the injuries he is claiming. At most, Plaintiff suffered a scratch on his face with some swelling, pain, and crepitation. There were significant gaps in treatment, inconsistencies in subjective complaints, and two missed doctor's appointments. No reasonable jury could conclude that plaintiff's injuries were more than *de minimis.* Because plaintiff's injuries were *de minimis*, no constitutional violation can be found even if defendants acted with deliberate indifference. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir., 1994), *cert. denied*, 513 U.S. 1114 (1995).

## **RECOMMENDATION**

Based upon the foregoing, the undersigned recommends that **Defendants' Motion for Summary Judgment [10-1] be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

November 13, 2006

Charleston, South Carolina

<u>**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**</u>
<u>**& The Serious Consequences of a Failure to Do So**</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must** *specifically identify* **the portions of the Report and Recommendation to which objections are made** *and* **the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that

party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

   **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.**  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
